**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re Application of ,

FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LP, FourWorld Special Opportunities Fund, LLC, FW Deep Value Opportunities Fund I, LLC Corbin ERISA Opportunity Fund, Ltd. and Harspring Capital, LP,

Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings,

**Index No. 1:25-mc-78**

---

## PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

Damian Vallejo
**Dunning Rievman & MacDonald LLP**
1350 Broadway, Suite 2220
New York, New York 10018
(202) 469-1470
dvallejo@drmlaw.com

*Attorneys for Petitioners*

February 27, 2025

1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 3

    A.    Parties to the Appraisal Proceedings and the Merger ............................................. 3

    B.    Bermuda Appraisal Proceedings ........................................................................... 5

    C.    Goldman Sachs and the Discovery Sought ............................................................ 6

ARGUMENT ....................................................................................................................... 9

I.    THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS.... 10

    A.    Goldman Sachs Is Found in This District ............................................................ 10

    B.    The Discovery Is "For Use" in a Foreign Proceeding .......................................... 11

    C.    Petitioners Are "Interested Persons" ................................................................... 12

II.    THE *INTEL* FACTORS WEIGH STRONGLY IN FAVOR OF DISCOVERY ............. 12

    A.    *INTEL I*:  Goldman Sachs Is Not a Party to the Appraisal Proceedings .............. 12

    B.    *INTEL II*: The Bermuda Court Is Receptive to the Requested Discovery ........... 13

    C.    *INTEL III*: Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions ....................................................................................................... 14

    D.    *INTEL IV*: The Subpoena Is not Unduly Burdensome ......................................... 15

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Azima v. Citibank, N.A.*, No. 1:22-MC-72 (KPF), 2022 WL 1287938 (S.D.N.Y. Apr. 29, 2022) 13

*Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) .............. 12, 14, 17

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) .. 12

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................ 11

*Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) .................................. 14, 17, 19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .................................. 11

*ILKB, LLC v. Singh*, No. 20-CV-4201 (ARR) (SJB), 2021 WL 2312951 (E.D.N.Y. June 7, 2021)
    ................................................................................................................................................ 11

*In re Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017) .................................................. 9, 12

*In re Al-Attabi*, 21-MC-207 (VSB) (RWL), 2022 WL 229784 (S.D.N.Y. Jan. 26, 2022) ............ 15

*In re Alpine Partners (BVI) L.P.*, No. CV 24-337 (KSH) (JSA), 2024 WL 4336824 (D.N.J. Sept.
    27, 2024) ............................................................................................................................... 16

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL
    3844464 (S.D.N.Y. Dec. 29, 2006) ....................................................................................... 19

*In re Application of Hill*, 2005 WL 1330769 (S.D.N.Y. June 3, 2005) ....................................... 15

*In re Bayer AG*, 146 F.3d 188 (3d Cir. 1998) ........................................................................... 18

*In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ............................................................... 11, 18

*In re Habib*, No. 1:21-MC-522 (KMK), 2022 WL 1173364 (S.D.N.Y. Apr. 20, 2022) ............. 19

*In re Lane*, No. 22 Misc. 34 (LGS), 2022 WL 16737132 (S.D.N.Y. Nov. 7, 2022) .................... 12

*In re Oasis Core Investments Fund Ltd.*, No. 23-MC-402 (SHS), 2024 WL 472984 (S.D.N.Y. Feb.
    7, 2024) ................................................................................................................................. 16

*In re Porsche Automobil Holding SE*, No. 1:15-mc-417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ................................................................................................................ 10, 15, 20

*In re Top Matrix Holdings, Ltd.*, 1:18-MC-465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ............................................................................................................................ 17, 19

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................................................... 11

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ..................................... passim

*Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95 (2d Cir. 2009) ............................................ 10

*Matter of Degens*, No. 1:20-MC-237 (JGK) (RWL), 2020 WL 4252725 (S.D.N.Y. Jul. 24, 2020) ............................................................................................................................................ 18

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) .................................................................. 10, 12, 17

**Statutes**

28 U.S.C. § 1782 ................................................................................................................. passim

FRCP Rule 30 ............................................................................................................................ 17

iii

FourWorld Global Opportunities Fund, Ltd., FourWorld Event Opportunities, LP, FourWorld Special Opportunities Fund, LLC, FW Deep Value Opportunities Fund I, LLC and Corbin ERISA Opportunity Fund, Ltd. ("**FourWorld**") and Harspring Capital, LP ("**Harspring**" and, together with FourWorld, "**Petitioners**") respectfully submit this opening brief in support of an application pursuant to 28 U.S.C. § 1782 (the "**Application**") seeking an order: (a) granting Petitioners leave to serve a subpoena on Goldman Sachs & Co. LLC ("**Goldman Sachs**"); (b) directing Goldman Sachs to produce the materials described in the Subpoena within thirty days of service of the Subpoena; (c) directing Goldman Sachs to provide deposition testimony in compliance with the Subpoena on a mutually agreeable date within a reasonable time after Goldman Sachs' confirmation of its final production of documents in response to the Subpoena issued against it; and (d) granting any and all other relief the Court deems just and proper.

## PRELIMINARY STATEMENT

Petitioners respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take discovery from an entity found in this District for use in shareholder appraisal rights litigation (the "**Appraisal Proceedings**") pending in the Supreme Court of Bermuda (the "**Bermuda Court**"). In the Appraisal Proceedings, Petitioners seek a determination of the fair value of their shares in Enstar Group Limited ("**Enstar**" or the "**Company**"), a Bermuda company which, after its purchase by Sixth Street Partners, LLC ("**Sixth Street**" or the "**Buyer**") through the execution of a series of mergers further detailed below, will become a wholly owned subsidiary of Elk Bidco Limited (the "**Parent**") and will be delisted from the NASDAQ Stock Market (the "**Merger**"). Goldman Sachs acted as financial advisor to the Company and provided an opinion regarding the Merger from a financial standpoint. Through this Application, Petitioners seek discovery relating

1

to the core issues in the Appraisal Proceedings: the fair value of the Company and the process that led to the Merger price.

Petitioners' Application meets all of the statutory requirements of Section 1782: (i) Goldman Sachs "resides or is found" in this District; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Appraisal Proceedings; and (iii) Petitioners, plaintiffs in the Appraisal Proceedings, meet the standard for an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioner's Application. *See Intel Corp. v. Advanced Micro Devices*, Inc., 542 U.S. 241, 264 (2004).

The first *Intel* factor weighs in favor of discovery because Petitioners seek discovery from "nonparticipants" in the Appraisal Proceedings. *Id.* As recognized in *Intel*, "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent §1782(a) aid." *Id.* Goldman Sachs is not a named party in the Appraisal Proceedings or otherwise subject to the jurisdiction of the Bermuda Court.

Under the second *Intel* factor, which considers the character of the foreign proceeding and receptivity of the foreign tribunal, there is no indication, let alone the required "authoritative proof," suggesting that the Bermuda Court might be unreceptive to Section 1782 assistance. *Id.* To the contrary, as established in the declaration of Petitioners' Bermuda counsel, Delroy B. Duncan KC, Petitioners will have the right to present evidence gathered under Section 1782 of the Bermuda Court in support of their claims. Several U.S. courts have granted Section 1782 applications for the production of documents in aid of foreign appraisal proceedings, including in Bermuda courts.

2

Under the third *Intel* factor, the Application is not concealing any improper attempt to circumvent foreign discovery restrictions on proof gathering. *See* Intel, 542 U.S. at 265. The requested discovery does not implicate any privilege or special protection that would make it improper under Bermuda law.

Under the fourth *Intel* factor, the proposed discovery is not unduly burdensome. *Id.* To the contrary, the proposed Subpoena is tailored to seek evidence addressing the fair value of the Petitioners' shares in the Company and the process that the Buyer and the Company undertook to negotiate and approve the Merger. As explained in the accompanying declaration of Petitioner's Bermuda counsel, such evidence is directly relevant to the critical issues in the Appraisal Proceedings.

Finally, the Court should exercise its discretion to order production of any responsive discovery that Goldman Sachs has in its possession, custody, or control, regardless of the physical location of that evidence. Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad, particularly where, as here, the discovery is from a third party not subject to the jurisdiction of the foreign court.

## BACKGROUND

### A.    PARTIES TO THE APPRAISAL PROCEEDINGS AND THE MERGER

The Petitioners are shareholders of the Company and the only dissenting shareholders who have initiated appraisal proceedings against the Company. FourWorld, a series of investment funds managed by SEC registered adviser FourWorld Capital, LLC, holds 208,100 ordinary shares in the Company. *See* Declaration of Delroy B. Duncan KC ("**Duncan Decl.**"), Ex. 1, ¶ 1. Harspring, an investment fund managed by New York-based Harspring Capital Management, LLC, holds 62,000 ordinary shares in the Company. *Id.*, Ex. 2, ¶ 1.1.

3

Enstar is an exempted company limited by shares under the laws of Bermuda. *Id.* at 13. Founded in 1993, Enstar is a leading global (re)insurance group that offers innovative capital release solutions through its network of group companies in Bermuda, the US, the UK, Continental Europe and Australia. *Id.*  Its core focus is acquiring and managing (re)insurance companies and portfolios of (re)insurance businesses in run-off. *Id.*  Since 2007, Enstar's shares have been, and still are, listed on the NASDAQ Stock Market under the ticker symbol "ESGR." *Id.*

On October 11, 2024, the Company filed a proxy statement with the SEC (the "**Proxy Statement**") which included the Agreement and Plan of Merger, dated as of July 29, 2024, by and among the Parent,  Elk Merger Sub Limited, Enstar, Deer Ltd. and Deer Merger Sub Ltd., pursuant to which the Company, certain wholly owned subsidiaries of the Company and a wholly owned subsidiary of the Parent intend to effect a series of mergers, with the Company surviving such mergers as a wholly owned subsidiary of Parent ("**Merger Agreement**"). Declaration of Damián Vallejo ("**Vallejo Decl.**"), Ex. 2 (Notice of Special Meeting of Shareholders).  Sixth Street, a global investment firm, has provided or will provide equity finance to its affiliates Elk Merger Sub Limited and Parent in the amount of $3.512 billion for executing the Merger. *Id.*, p. 17 (Equity Financing).

Once the three mergers contemplated by the Merger Agreement are finalized, each holder of Enstar's ordinary shares (with par value $1.00 per share) will be entitled to receive a total of $338 in cash per share, without interest. *Id.*, pp. 25 – 26.

Following the filing of the Proxy Statement, a special general meeting was held with certain Enstar shareholders voting to approve the Merger. *Id.*, Ex. 3.

Goldman Sachs acted as financial advisor to the Company for purposes of determining the fairness of the Merger from a financial perspective. *Id.*, Ex. 2, p. 44.  Goldman Sachs has also been

a long-time advisor of the Company. *Id*. The engagement letter between the Company and Goldman Sachs provides for Goldman Sachs' compensation, in the form of a transaction fee that is estimated at approximately US$54 million for its role, contingent upon the consummation of the Transaction. *Id.*, p. 71. Prior to being engaged, Goldman Sachs disclosed to the Company's board that it had a preexisting relationship with Sixth Street. *Id.*, p. 44. In the Fairness Opinion (as defined below) issued to the Company, Goldman Sachs also disclosed it had a previous relationship with Sixth Street, to which it had provided financial and/or underwriting services. *Id.*, p. 70.

Since its engagement by the Company for purposes of assessing the fairness of the Merger, Goldman Sachs provided the Company with ongoing advice and presentations and a fairness opinion (*i.e.*, an opining on whether the transaction is fair from a financial point of view), presenting its analysis both orally and in writing (the "**Fairness Opinion**"). *Id.*, pp. 56, 65 – 71, and Annex L.

### B.    BERMUDA APPRAISAL PROCEEDINGS

On November 8, 2024, Petitioners exercised their appraisal rights and, by filing Originating Summonses asking the Bermuda court to determine the fair value of their shares under Section 106(6) of the Bermuda Companies Act, initiated proceedings in Bermuda against the Company. Duncan Decl., ¶ 19. As described in the accompanying declaration of Delroy B. Duncan KC, Petitioners will have the opportunity to present documentary evidence, witness testimony, and legal arguments to the Bermuda Court. The Bermuda Court will be charged with determining the fair value of the dissenting shareholders' shares. *Id.*, ¶¶ 28 – 29. This process involves examining both the valuation of the Company and the fairness of the process that led to the approval of the Merger. *Id.*, ¶ 32 – 34.

### C.     GOLDMAN SACHS AND THE DISCOVERY SOUGHT

Through this Application, Petitioners seek discovery from Goldman Sachs, the financial advisor to the Company that conducted the deal process and produced the Fairness Opinion, on issues relevant to the Appraisal Proceedings, including: (a) the fairness of, and the process to reach, the Merger price, including negotiations between Sixth Street, as the buyer, and the Company; (b) financial analyses prepared by Goldman Sachs as a financial advisor to the Company; (c) any alternative transactions to the Merger that were considered, the no-names-basis discussions with certain parties, and any advice Goldman Sachs provided regarding these matters; (d) documents pertaining to the Company's valuation, including any material non-public information, valuations, models, and any forecasts of the Company's future performance ("**Requested Discovery**").  The Requested Discovery will significantly assist the Bermuda Court in evaluating the Merger and its negotiation process. *See* Duncan Decl., ¶ 49.  It will also assist the Bermuda Court in determining the fair value of Petitioners' shares in the Company. *Id.*

Goldman Sachs is an investment banking firm organized under the laws of New York and headquartered in 200 West Street, New York, New York, NY. Vallejo Decl., Ex. 4.

Goldman Sachs was engaged by the Company to act as its financial advisor and determine whether the Merger was fair from a financial standpoint.  The Proxy Statement describes the extensive involvement Goldman Sachs played in the negotiation, consideration and recommendation of the Merger. *See, generally,* Vallejo Decl., Ex. 2, pp. 43 – 56 (Background of the Mergers).  Goldman Sachs attended several information sessions and made several "preliminary presentations containing preliminary financial analyses to the Board on March 26, 2024, April 4, 2024, April 8, 2024, and April 10, 2024." *Id.*, p. 71.

6

Goldman Sachs negotiated directly with Six Street on behalf of the Board, relaying information between Sixth Street and the Company. *See, e.g., Id.*, p. 48 ("[a]fter discussion and deliberation, the Board instructed Mr. Campbell and representatives of Goldman Sachs to inform Sixth Street, which Mr. Campbell and the Goldman Sachs representatives did promptly following the information session, that Sixth Street needed to increase its offer price to engage in further discussions with the Board and that without the prior approval of the Board, Sixth Street was not permitted to discuss any terms of any potential transaction with Company management"); *Id.*, p. 49 ("[f]ollowing discussion and deliberation, the Board (i) directed the Goldman Sachs representatives to inform Sixth Street that the Company was willing to negotiate the terms of a transaction at $338 per Enstar Ordinary Share and with a termination fee of $102 million to be payable during the "go-shop" period, subject to the go-shop period being a longer period (which the Goldman Sachs representatives did promptly following the information session [...].").

In addition, Goldman Sachs regularly updated the Board on the status of the Merger negotiations with Sixth Street, including Sixth Street's efforts to obtain equity and debt finance, and Sixth Street's requests to engage in discussion with certain shareholders to discuss their participation in the Merger and/or the company resulting from the Merger. *See, e.g., Id.*, p. 50 ("[r]epresentatives of Goldman Sachs provided the Board with an update on the status of negotiations with Sixth Street regarding a potential transaction, noting that Sixth Street had informed representatives of Goldman Sachs that Sixth Street had begun discussions with 13 potential equity financing sources, which were approved by the Company, and expected to provide the Board updates on such discussions on a continuing basis. Representatives of Goldman Sachs also relayed to the Board that Sixth Street had requested to contact Stone Point and Mr. Silvester to begin preliminary discussions to understand whether Stone Point or Mr. Silvester would be

7

interested in participating in any potential transaction between Sixth Street and the Company by "rolling over" some or all of their existing equity interests in the Company into the post-closing private company."); *Id*. at p. 51 ("[r]epresentatives of Goldman Sachs provided the Board an update on the status of discussions with Sixth Street, including Sixth Street's equity financing and debt financing efforts in respect of the potential transaction").

Goldman Sachs ultimately provided its Fairness Opinion, both orally and in writing, concluding that the consideration to be paid per Enstar ordinary share pursuant to the Merger Agreement was fair from a financial point of view to the holders of Enstar's ordinary shares. *Id*., pp. 56, 65 – 71, and Annex L.

For purposes of rendering its Fairness Opinion and performing its related financial analyses, Goldman Sachs reviewed a series of documents and financial data provided by the Company, as well as publicly available information. *Id*., p. 65.  Additionally:

> Goldman Sachs also held discussions with members of the senior management of the Company regarding their assessment of the past and current business operations, financial condition and future prospects of the Company; reviewed the reported price and trading activity for the Enstar Ordinary Shares; compared certain financial and stock market information for the Company with similar information for certain other companies the securities of which are publicly traded; reviewed the financial terms of certain recent business combinations in the insurance industry and in other industries; and performed such other studies and analyses, and considered such other factors, as it deemed appropriate. *Id.*

In connection with its Fairness Opinion, Goldman Sachs delivered to the Company's Board of Directors multiple financial analyses: (1) Implied Premiums – based on the historical trading prices and volumes for the Estar Ordinary Shares over certain reference periods and specific dates, as well as in certain dates; (2) Dividend Discount Analysis – based on a discounted future value for the Company, incorporating financial projections provided by the Company; (3) Present Value

of Future Share Price Analysis – based on a discounted future value for the Company, incorporating financial projections provided by the Company; (4) Select Transaction Analysis – based on information from selected transactions in the property and casualty reinsurance industry since 2011; and (5) Premia Paid Analysis – based on the acquisition premia for certain public companies in the United States between July 26, 2014 and July 26, 2024. *Id*., pp. 66 – 69.

Finally, during the Go-Shop period, Goldman Sachs contacted 34 potential counterparties (including 23 strategic parties and 11 financial sponsor parties) for purposes of determining whether an alternative strategic transaction to the Merger would be of interest. *Id*., p. 56.

## ARGUMENT

28 U.S.C. § 1782 permits United States District Courts to grant discovery for use in a pending foreign proceeding. *Intel*, 542 U.S. at 246. A Section 1782 application must satisfy three statutory requirements: (1) the discovery is sought from someone who resides or is found within the district; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017).

If these statutory requirements are met, the court then considers four discretionary *Intel* factors in deciding whether to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

In exercising this discretion, courts are often mindful of "the twin aims of [Section 1782] providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." _Mees v. Buiter_, 793 F.3d 291, 297–98 (2d Cir. 2015).   None of the discretionary factors should be given more weight than the others, and no one factor is dispositive.  _Marubeni Am. Corp. v. LBA Y.K._, 335 F. App'x 95, 97 (2d Cir. 2009).   Moreover, "[a]s a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation." _In re Porsche Automobil Holding SE_, No. 1:15-mc-417 (LAK), 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

## I.      THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS

### A.      GOLDMAN SACHS IS FOUND IN THIS DISTRICT

Section 1782's first statutory element—that an entity "reside or is found" in the District— is coextensive with the limits of personal jurisdiction consistent with due process.  _In re del Valle Ruiz_, 939 F.3d 520, 527–28 (2d Cir. 2019).   Consistent with due process, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  _Goodyear Dunlop Tires Operations, S.A. v. Brown_, 564 U.S. 915, 919 (2011) (quoting _Int'l Shoe Co. v. Washington_, 326 U.S. 310, 317 (1945)).   A corporation is at home (and thus subject to general jurisdiction, consistent with due process) in a state of its: (i) incorporation or (ii) principal place of business. _Daimler AG v. Bauman_, 571 U.S. 117, 137-39 & n.19 (2014); _see also_ _ILKB, LLC v. Singh_, No.

20-CV-4201 (ARR) (SJB), 2021 WL 2312951, at *2 (E.D.N.Y. June 7, 2021) (applying *Daimler* to a limited liability company).

The "found in" requirement is satisfied here because Goldman Sachs is organized under the laws of New York and headquartered in 200 West Street, New York, NY 10282. *In re Lane*, No. 22 Misc. 34 (LGS), 2022 WL 16737132, at *3 (S.D.N.Y. Nov. 7, 2022). *See* Vallejo Decl., Ex. 4.

### B. THE DISCOVERY IS "FOR USE" IN A FOREIGN PROCEEDING

Section 1782's "for use" requirement is satisfied by showing that the Requested Discovery may be submitted and relied on by the foreign tribunal. *See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015). Petitioners must merely show that they have the procedural right to submit the requested documents to the foreign tribunal. *Accent Delight*, 869 F.3d at 132. A Section 1782 petitioner is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("as a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application" (emphasis in original)). Instead, the district court considers "the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *Accent Delight*, 869 F.3d at 131 (emphasis in original); *Mees*, 793 F.3d at 298 (stating that the "for use" element is satisfied if materials sought can "be employed with some advantage or serve some use in the proceeding").

As explained in the declaration from Petitioners' Bermuda counsel, the Bermuda Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully

obtained through Section 1782 and otherwise admissible.    In the Appraisal Proceedings, the Bermuda Court will consider all facts and matters that may have a bearing on the determination of fair value.    As explained by Petitioners' Bermuda counsel, particularly when the Company points to the Merger price as an indicator of fair value, the Court's inquiry often turns to a consideration of whether the process that led to that price was a fair process.  Duncan Decl., ¶¶ 32– 35.

The Requested Discovery from Goldman Sachs, the Company's financial advisor, targets key information about both the price and the process through which the price of the Company's shares was considered, negotiated, and ultimately agreed upon.    Accordingly, the Requested Discovery will be of "use" to the Bermuda Court given its relevance in determining the fair value of Petitioners' (former, once the Merger closes) shareholdings.

### C.    Petitioners Are "Interested Persons"

"No doubt litigants are included among…the interested persons who may invoke § 1782." *Azima v. Citibank, N.A.*, No. 1:22-MC-72 (KPF), 2022 WL 1287938, at *3 (S.D.N.Y. Apr. 29, 2022) (quoting *Intel*, 542 U.S. at 256).  Petitioners are a party to the Appraisal Proceedings and are thus "interested persons" under Section 1782.

## II.    THE *INTEL* FACTORS WEIGH STRONGLY IN FAVOR OF DISCOVERY

### A.    *INTEL I*:  Goldman Sachs Is Not a Party to the Appraisal Proceedings

The first *Intel* factor asks whether the party from whom discovery is sought is a participant in the foreign proceeding.  This is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.  Here, Goldman Sachs is not a participant in the Appraisal Proceedings and is not subject to the jurisdiction of the Bermuda Court.

Accordingly, the first *Intel* factor weighs in favor of granting the Application.

**B.    *INTEL II*: THE BERMUDA COURT IS RECEPTIVE TO THE REQUESTED DISCOVERY**

The second *Intel* factor requires courts to consider whether the "nature, attitude and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance. *Brandi–Dohrn*, 673 F.3d at 81.   In the Second Circuit, courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782 . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).   "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Id.* at 1102; *see also In re Porsche*, 2016 WL 702327, at *8 ("[t]he law on this factor is clear: '[d]istrict courts have been instructed to tread lightly and heed only clear statements by foreign tribunals' that they would reject Section 1782 assistance.'") (internal citations omitted).

Therefore, there is a strong presumption that foreign tribunals will be receptive to evidence obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the evidence obtained through Section 1782. *See In re Al-Attabi*, 21-MC-207 (VSB) (RWL), 2022 WL 229784, at *8 (S.D.N.Y. Jan. 26, 2022) ("Second Circuit case law places the burden on the party opposing discovery [under Section 1782] to show that a foreign court would *not* be receptive to this assistance.") (emphasis in original and quotation marks omitted).

The Bermuda Court will consider any evidence that has a bearing on determining the fair value of a company's shares. *See* Duncan Decl., ¶¶ 28 – 36.   Moreover, as set forth in the Duncan Declaration, Bermuda courts have admitted evidence obtained through Section 1782. *See id.*, ¶ 43.

13

Further, several US courts have recognized that Bermuda courts are receptive to evidence obtained through Section 1782. *See, e.g.*, *In re Application of Hill*, No. M19-117 (RJH), 2005 WL 1330769 (S.D.N.Y. June 3, 2005) (rejecting motion to quash Section 1782 subpoena for discovery to be used in Bermudan and Hong Kong liquidation proceedings); *In re Oasis Core Inv. Fund Ltd.*, No. 23-MC-402 (SHS), 2024 WL 472984, at *2 (S.D.N.Y. Feb. 7, 2024) ("[o]n the second factor, Robinson and Wasty both agree that Bermuda courts are receptive to evidence obtained pursuant to Section 1782"); *In re Alpine Partners (BVI) L.P.*, No. CV 24-337 (KSH) (JSA), 2024 WL 4336824, at *6 (D.N.J. Sept. 27, 2024) ("[t]his Court's review of the relevant case law confirms that courts in Bermuda are receptive to Section 1782 discovery.").

Accordingly, the second *Intel* factor weighs in favor of granting the Application.

### C.    *INTEL III*: PETITIONERS ARE NOT CIRCUMVENTING FOREIGN PROOF-GATHERING RESTRICTIONS

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself. *Id.* at 261 ("[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). This factor thus counts against discovery only in the extreme circumstances where a Section 1782 application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges that *prohibit* the acquisition or use of certain materials," *Mees*, 793 F.3d at 303 n.20 (emphasis in original), or "discovery that trenched upon

the *clearly established* procedures of a foreign tribunal." *Euromepa*, 51 F.3d at 1099 (emphasis in original, internal quotation marks omitted).   No such circumstance is present here.

In addition, there is no exhaustion requirement—*i.e.*, a requirement that Petitioners first seek the discovery in a foreign court. *Mees*, 793 F.3d at 303 ("[w]e have rejected such a quasi-exhaustion requirement, reasoning that it finds no support in the plain language of the statute and runs counter to its express purposes.") (internal quotation marks omitted); *In re Top Matrix Holdings, Ltd.*, 1:18-MC-465 (ER), 2020 WL 248716, at *6 (S.D.N.Y. Jan. 16, 2020) ("[a]pplicants are not required to exhaust all available remedies in the foreign jurisdiction before filing a Section 1782 application.").   Instead, the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner from gathering the information sought. *See Brandi–Dohrn*, 673 F.3d at 82 ("[w]hile *Intel* concerned the *discoverability* of evidence in the foreign proceeding, we see no reason why it should not extend to the *admissibility* of evidence in the foreign proceeding.") (emphasis in original).   No such prohibition exists here.   Therefore, the third *Intel* factor weighs in favor of granting the Application.

### D.   *INTEL IV*: THE SUBPOENA IS NOT UNDULY BURDENSOME

The Requested Discovery is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *Valle Ruiz*, 939 F.3d at 532–33 ("the text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure"); *see also In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("[t]he reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").   The proposed Subpoena seeks documents and information directly relevant to the central issues in the Appraisal Proceedings. *See* Background Section C, *supra*.   In

15

addition, the proposed Subpoena is temporally limited to the period in which the Company began reviewing and considering strategic opportunities ("including a sale of the Company") and the Merger was being contemplated, negotiated, and executed. *See* Vallejo Decl., Ex. 2, p. 43.

Further, to the extent any of the Requested Discovery is located outside of the United States, that does not create any undue burden.   The documents sought will principally be in electronic form, in English, and likely are accessible from the United States in any event. *See Matter of Degens*, No. 1:20-MC-237 (JGK) (RWL), 2020 WL 4252725, at *5 (S.D.N.Y. Jul. 24, 2020) ("[m]ost if not all the records sought should be available electronically and therefore of little burden to access and produce.   Accordingly, requiring production of documents no matter where they are deemed to reside is appropriate in this case."); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006) ("[t]he fact that the documents are located abroad, itself, is of little concern.   They can easily be shipped to McKinsey's headquarters in New York (or perhaps accessed electronically)").

Petitioners are also willing to meet and confer with Goldman Sachs to address any scope or burden concerns.   Should the parties be unable to reach an agreement over any scope or burden concerns, the parties can present those disputes to the Court.  If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright" and precluding any discovery into those issues directly probative of the matters in the Appraisal Proceedings. *Euromepa, S.A.*, 51 F.3d at 1101; *see also In re Habib*, No. 1:21-MC-522 (KMK), 2022 WL 1173364, at *4 (S.D.N.Y. Apr. 20, 2022) ("[w]here discovery sought under § 1782 is unduly burdensome, the Second Circuit has instructed district courts to issue 'a limited grant of discovery,' where possible, rather than deny

16

the application.") (internal citations); *Top Matrix Holdings Ltd.*, 2020 WL 248716, at *7 (granting application because even though petitioner's "request is too broad, it can be appropriately trimmed.").

In addition, district courts have typically been "generous" in granting Rule 30(b)(6) depositions in Section 1782, even in cases with "tight schedule[s]" and other potential difficulties. *In re Porsche*, 2016 WL 702327, at *13 (permitting 30(b)(6) deposition despite "tight schedule" because it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance they would have to produce documents and prepare witnesses on a short timetable").   Here, Rule 30(b)(6) depositions of Goldman Sachs are appropriate and will significantly aid the Bermuda Court in understanding the negotiation and valuation record in a complex, multi-billion dollar transaction.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant their Application.

Dated:    New York, New York
          February 27, 2025

/s/Damian Vallejo
Damian Vallejo
Dunning Rievman & MacDonald LLP
1350 Broadway, Suite 2220
New York, New York 10018
(202) 469-1470
dvallejo@drmlaw.com

*Attorneys for Petitioners*

17